## A01A1696. DAVIS v. THE STATE.
(560 SE2d 711)

PHIPPS, Judge.

Edward Davis, a convicted felon, was indicted for eight separate offenses based largely on allegations that he drove away without pay-

---

ing for gasoline, shot the gas station owner who pursued him and attempted to elude the police. The trial court directed a verdict on one count, and the jury convicted Davis of the remaining seven counts. He was sentenced to a total of thirty-five consecutive years, twenty-five to serve and ten on probation. On appeal, Davis challenges his conviction and sentence and claims 20 errors. We find only one error — the failure to merge Count 2 into Count 8 — and reverse the conviction and sentence on Count 2 and remand for resentencing. We find no merit in Davis's remaining claims and affirm his convictions on all other counts.

1. Davis challenges the sufficiency of the evidence to support his convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict.[1] We do not weigh the evidence or determine witness credibility, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] Under *Jackson v. Virginia*,[3] we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

At trial, Jeff Parrish testified that he saw Davis drive a gray four-door car to one of the pumps at Parrish's gas station, pump $14 worth of gas and drive off. Parrish got into his truck and followed Davis. He drove up next to Davis and told him that he needed to pay for the gas. Davis responded that he did not have any money and drove off. Parrish called 911 from his truck and continued following Davis. When they reached a parking lot, Davis pulled out a sawed-off shotgun and shot Parrish in the arm.

As Officer Stover of the Savannah Police Department was responding to the 911 call, he saw a car matching the description he had received over the radio. Stover followed the car as it ran a stop sign, drove the wrong way on a divided street and forced several other cars off the road before it ran into a drainage ditch. Stover identified Davis at trial as the person he saw driving the car. Stover then saw Davis grab a black bag, which the police later discovered contained a sawed-off shotgun and shotgun shells, and run from the car into a wooded area. Davis was caught by another officer approximately 150 feet from where he entered the wooded area. A search of the car by forensics officer McCormick revealed an automatic pistol under the driver's seat.

Davis claims that because only Parrish identified him as the perpetrator and he denies his guilt, the weight of the evidence is in his favor. But the jury was entitled to believe Parrish's testimony and to

---

[1] *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Newman*, supra.
[3] Supra.

disbelieve Davis's plea of not guilty (he chose not to testify at trial).[4] In fact, the testimony of a single witness is generally sufficient to establish a fact.[5] This includes the uncorroborated identification of an assailant by the victim.[6] Here, although Parrish's testimony alone was sufficient to establish Davis's identity,[7] his identification testimony was corroborated by Stover. Parrish's testimony, combined with the testimony of Officers Stover and McCormick, provided sufficient evidence for a rational trier of fact to find beyond a reasonable doubt each of the elements of the offenses for which Davis was convicted.[8]

2. Davis claims that the trial court should have bifurcated the trial and tried the charges of possession of a firearm by a convicted felon separately. It did.

3. Davis contends that the trial court erred by denying his motion for mistrial after he objected to having his counsel represent him.

When Davis became disruptive and informed the court, in the presence of the jury panel, that he did not want his attorney to represent him, his attorney moved for mistrial. The court responded that it did not know whether Davis should get the benefit of creating a mistrial. Davis's attorney expressed understanding of the court's position and requested a limiting instruction. The court responded by informing the panel that every defendant has a right to be present when criminal charges against him are being tried, but that the court has discretion to remove a defendant who becomes disruptive to the proceedings. The court then inquired whether Davis's outburst would prevent the prospective jurors from being fair to either party. Davis's attorney did not object to the court's response or renew his motion for mistrial. Thus, the issue has been waived.[9]

4. In response to the court's inquiry whether the panel members could be fair in light of Davis's disruption, Juror No. 6 responded, "It would be difficult." The court then asked,

Does anyone have any particular opinion fixed with respect to the guilt or innocence of the accused that could not be changed by whatever the evidence is that is presented during the course of trial and follow the instructions of the Court with respect to that particular evidence and remove

---

[4] See *Smith v. State*, 246 Ga. App. 191, 192 (1) (539 SE2d 881) (2000).

[5] OCGA § 24-4-8.

[6] *Samuels v. State*, 223 Ga. App. 275 (1) (477 SE2d 414) (1996).

[7] Id. at 276.

[8] See *Smith*, supra.

[9] *Wells v. State*, 243 Ga. App. 629, 631 (3) (534 SE2d 106) (2000).

from your mind anything that has been witnessed or heard thus far with respect to the outburst of the accused?

Although none of the panel members responded affirmatively to this question, Davis argues that the court erred by not striking Juror No. 6 for cause. We disagree. Absent proof of a manifest abuse of discretion, a trial court's refusal to strike a juror for cause will not be disturbed.[10] Moreover, "[t]he fact that a potential juror may have some doubt as to his impartiality, or complete freedom from all bias, does not demand, as a matter of law[,] that the juror be excused for cause."[11]

5. Davis contends that the trial court erred by allowing Parrish to make an in-court identification, but fails to offer any reason for excluding the testimony. Allowing an eyewitness to make an in-court identification has been approved even where the witness was not absolutely sure of his identification.[12] "Under those circumstances, the question of the accuracy of the identification was one for the jury."[13]

6. Davis claims the trial court erred by admitting Exhibits 1 and 2, photographs of Parrish's injured arm, and Exhibit 6, a photograph of Davis in front of a police car, because the State's witness began to describe the photographs without first identifying them. A photograph is authenticated by showing it is a fair and accurate representation of the object, scene or person depicted.[14] Parrish testified that Exhibits 1 and 2 constituted fair and accurate representations of his injured arm and that Exhibit 6 constituted a fair and accurate representation of the person who shot him.

Davis further challenges Exhibit 6 because the witness identifying the exhibit was not present when the photograph was taken. But any witness familiar with the subject depicted can authenticate a photograph; the witness need not be the photographer nor have been present when the photograph was taken.[15] Parrish testified that he got a good look at the person who shot him.

7. Davis challenges the admission of Exhibit 5, a photograph of his car, because certain items on the hood were not identified as connected to this case. In fact, the items on the hood (a sawed-off shotgun, an automatic pistol and a cellular telephone) were admitted without objection. The pistol and telephone were identified as being

---

[10] Scott v. State, 193 Ga. App. 577, 578 (2) (388 SE2d 416) (1989).
[11] (Citation and punctuation omitted.) Wilson v. State, 220 Ga. App. 487, 488 (1) (469 SE2d 516) (1996).
[12] Johnson v. State, 159 Ga. App. 333 (1) (283 SE2d 375) (1981).
[13] (Citation omitted.) Id.
[14] See Bierria v. State, 232 Ga. App. 622, 626 (8) (502 SE2d 542) (1998).
[15] Id.

found in Davis's car, and the shotgun was identified as being in Davis's possession while he was being pursued by police officers.

8. The trial court overruled numerous objections to the admission of Exhibit 15, a piece of copper tubing found in Davis's car, which Stover testified would be used to smoke illegal substances. On appeal, Davis merely reiterates the objections raised by his trial counsel. We find that the objections were properly overruled. The State elicited testimony from Stover to lay a foundation, based on the officer's training and experience, to show that that type of tubing was frequently used for smoking illegal substances and to show that Exhibit 15 was relevant to prove Count 4, possession of tools for commission of a crime. Although Count 4 was subsequently dismissed, Exhibit 15 was properly admitted during the State's presentation of its case.

9. Davis claims that the trial court erred by allowing the State to impeach its own witness.

On cross-examination, Stover testified that the copper tubing could be used to smoke legal substances, such as cigarettes or rabbit tobacco. On redirect, the State asked: "[Counsel] asked you with, I guess State's Exhibit #15, that you could smoke anything out of it. Based on your training and experience, what do you usually see —." At that point, Davis's attorney objected and argued that the State was trying to impeach its own witness. The trial court instructed the State to "leave that to the province of the jury." The State did not ask any further questions.

We find that any attempt by the State to impeach its own witness was precluded by Davis's objection and the trial court's ruling.

10. Davis challenges the admission of Exhibit 13, a spent shotgun shell, because his trial counsel was precluded from cross-examining the witness (McCormick) before the exhibit was admitted. Although Davis was entitled to a thorough and sifting cross-examination of all witnesses called against him, the scope of such cross-examination is within the sound discretion of the trial judge.[16] And that discretion will not be disturbed unless manifestly abused.[17]

Davis's counsel cross-examined McCormick thoroughly about any testing done to determine if the shell had actually been fired from the shotgun linked to Davis. Because his cross-examination on this issue was not limited, we find no abuse of discretion.

11. Davis argues that the court erred by admitting fingerprint evidence that was not provided to his counsel prior to trial and by refusing to grant a mistrial when the evidence was disclosed on cross-examination of a State's witness.

---

[16] OCGA § 24-9-64; *Scott v. State*, 178 Ga. App. 222, 224 (3) (343 SE2d 117) (1986).

[17] *Sanders v. State*, 181 Ga. App. 117, 121 (3) (351 SE2d 666) (1986).

On cross-examination, McCormick revealed that fingerprint evidence had been taken from the scene. The State was not aware of the evidence prior to trial and thus had not provided it to Davis's counsel. The court ordered that any information relating to the fingerprints be provided to Davis's counsel and precluded the State from introducing or making any reference to the fingerprints. Because the evidence was excluded as provided for in OCGA § 17-16-6, Davis can show no harm caused by the discovery rule violation.[18] The motion for mistrial was properly denied.

12. Davis claims that the trial court should have granted a directed verdict on Count 4, possession of tools for commission of a crime. It did.

13. During the State's closing argument, Davis's counsel objected and moved for mistrial based on the following comments:

> We've got violence in this community. You hear it all the time, you see it on the news. We've got to stop it. And this is where it begins. This defendant committed a very horrendous crime and it's not because of his actions that we're not sitting here on something more serious. But we can stop it so that it's never committed again.

We find no abuse of the trial court's discretion in denying Davis's motion for mistrial. It is not improper for the prosecutor to appeal to the jury to convict for the safety of the community[19] or to convict to stem a problem of violence in the community.[20] Nor is it improper for the prosecutor to impress upon the jury its responsibility to enforce the law.[21]

14. The trial court erred by refusing to merge Count 2, a violation of OCGA § 16-11-106 (possession of a firearm during commission of a felony), with Count 8, a violation of OCGA § 16-11-133 (minimum period of confinement for person convicted who had prior convictions) because the violation of OCGA § 16-11-106 was established by proof of less than all the facts necessary to establish the violation of OCGA § 16-11-133.[22] Thus, Count 2 merged into Count 8 as a matter of fact, and we must reverse Davis's conviction on Count 2 and remand to the trial court for resentencing.[23]

15. Davis filed a motion for new trial, asserting that his trial

---

[18] *Bertholf v. State*, 224 Ga. App. 831, 832 (1) (482 SE2d 469) (1997).

[19] *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993).

[20] See id. (drug problem in the community).

[21] *McClain v. State*, 267 Ga. 378, 385 (4) (a) (477 SE2d 814) (1996).

[22] See OCGA §§ 16-1-7; 16-1-6; *Wyatt v. State*, 222 Ga. App. 604, 605 (2) (475 SE2d 651) (1996).

[23] *Wyatt*, supra at 606 (2).

counsel was ineffective in numerous respects. The trial court conducted a hearing on this claim and denied the motion. In its order, the trial court acknowledged that Davis and his counsel did not have a harmonious relationship, but found no merit in Davis's claims that his counsel was ineffective. On appeal, Davis has limited his ineffectiveness claims to the following: not preparing the case properly for trial; not communicating with him properly; making derogatory statements about him in front of the court; failing to subpoena witnesses he requested and aiding the State in identifying him in court.

To establish ineffectiveness of trial counsel, Davis must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[24] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[25] The test for reasonable attorney performance is " 'whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' "[26] We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[27]

(a) Davis claims that his attorney did not spend enough time with him to prepare his case, that he did not review or discuss the evidence with him and that he treated his opinions as irrelevant. He claims that his attorney met with him only three times prior to trial and that the first two meetings combined lasted no more than twenty minutes. At the motion for new trial hearing, Davis's trial counsel testified that he met with Davis personally six times and that he hired an investigator who also met with Davis. Trial counsel testified that he tried to review the State's discovery with Davis on two different occasions, but Davis refused to look at it.[28] The trial court was authorized to resolve these conflicts in the testimony in counsel's favor.[29]

(b) Davis claims that he was prejudiced when his counsel told the trial judge, outside the presence of the jury, that he was not going to sit there "any longer and let this man run one lie after another." He claims that he was further prejudiced when his counsel made certain that the court reporter had transcribed a derogatory comment Davis made about the judge. In his ruling at the conclusion of the

---

[24] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[25] Id. at 687-689.

[26] (Citations omitted.) *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998).

[27] *Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992).

[28] The record indicates that Davis was not very cooperative in the preparation of his defense.

[29] *Richardson v. State*, 194 Ga. App. 358, 359 (1) (390 SE2d 442) (1990).

motion for new trial hearing, the judge noted that Davis's counsel had expressed his dissatisfaction with Davis's continued allegations regarding his professional conduct but that counsel's comments were not prejudicial because they were not made in the jury's presence and because the judge had already inquired into the attorney-client relationship and was comfortable that the situation, although not harmonious, would not jeopardize Davis's right to a fair trial. With respect to Davis's derogatory comment to the judge, the judge stated that he had heard the comment and disregarded it. The judge further stated that the derogatory comment did not affect his demeanor during trial, any ruling he made during trial or the sentence he imposed after trial.

As observed by the United States Supreme Court in *Morris v. Slappy*[30] and by this court in *Jefferson v. State*,[31] "a meaningful relationship" between a defendant and his counsel is not a Sixth Amendment guarantee.[32] Because the jury was not present during the complained-of comments and the judge was not adversely influenced by them, we find Davis was not prejudiced.

(c) Davis claims that he asked his trial counsel to subpoena an employee of the gas station, but he failed to do so. Trial counsel testified that he did not call the gas station employee because she had identified Davis as the man who drove off without paying for gas. Counsel's decision was a matter of trial tactics and did not constitute ineffectiveness.[33]

(d) Davis argues that his trial counsel was ineffective because he broached the issue of his identification instead of waiting for the State to do it. The issue arose because Davis asked not to be present during trial and there was some question about how the State would identify him during the presentation of its case.

At the beginning of trial, the court brought Davis into the courtroom, reminded him that he had a constitutional right to be present and told him that he could remain so long as he did not become disorderly. Davis remained present in the courtroom during Parrish's testimony when Parrish identified him as the perpetrator. Thus, Davis was identified in the same manner as if he had not expressed a desire to be absent from the trial. It therefore made no difference that Davis's counsel mentioned the possibility that identification may be an issue before the State thought to do so.

*Judgment affirmed in part, reversed in part and remanded for resentencing. Smith, P. J., and Barnes, J., concur.*

---

[30] 461 U. S. 1, 14 (103 SC 1610, 75 LE2d 610) (1983).
[31] 209 Ga. App. 859, 862 (1) (434 SE2d 814) (1993).
[32] *Hammonds v. State*, 218 Ga. App. 423, 424 (1) (461 SE2d 589) (1995).
[33] *Hope v. State*, 239 Ga. App. 331, 332 (3) (a) (521 SE2d 372) (1999).

DECIDED FEBRUARY 19, 2002.

*Orin L. Alexis*, for appellant.
*Spencer Lawton, Jr., District Attorney, Benjamin B. Reed, Assistant District Attorney*, for appellee.